UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

ZSOLT FODOR,                              Chapter 7
                                          Case No. 05-14144-8W7

        Debtor.

_____/

### MEMORANDUM DECISION AND ORDER SUSTAINING CREDITORS' OBJECTION TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION

In order to qualify for the Florida homestead exemption, a debtor must be a permanent resident of the state and intend to make the property in question his permanent residence.  An alien can satisfy this residency requirement only if he has obtained permanent resident status or a "green card" as of the petition date.

On the date the debtor, Zsolt Fodor ("Fodor" or "Debtor"), filed his petition under chapter 7, his application to adjust to permanent resident status was pending.  Fodor did not acquire a green card until about three months after filing his petition.  As a result, Fodor did not fulfill the residency requirement as of the petition date.  Accordingly, the claim of homestead exemption made by Fodor will not be allowed, and the objection to the exemption filed by creditors Robert W. Geiszler and Joan E. Geiszler ("Creditors" or "the Geiszlers") will be sustained.

### *Undisputed Facts*

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on July 15, 2005.  On his Schedule C, the Debtor asserts that real property located at 2504 Southern Oak Circle in Clearwater, Florida, qualifies as his homestead and, as such, is exempt under Florida law from the claims of creditors.  Creditors Robert and Joan Geiszler are holders of a judgment entered on January 6, 2004, against the Debtor in the amount of $44,480.54.  The Geiszlers filed an Objection to Debtor's Claim of Homestead Exemption (Doc. No. 15), maintaining that the Debtor is neither a United States citizen nor a legal permanent resident entitled to claim residency in Florida.

The Debtor is a Hungarian citizen.  He and his family first came to the United States in 1985 on tourist visas to help his daughter further her tennis career.  The Debtor visited the United States each year thereafter until 1994, when he received a multiple entry business visa or "B-1 visa."  The multiple entry business visa allowed the Debtor to travel back and forth between Europe and the United States, but barred the Debtor from staying in the United States for more than 180 days at a time.

In August 2002, the Debtor divorced his first wife, who subsequently returned to Hungary.  He married his

current wife, a United States citizen, on August 8, 2004, and filed an Application to Register Permanent Residence or Adjust Status ("Application") on September 14, 2004. Two months later, while the Application was pending, the Department of Homeland Security issued the Debtor an Employment Authorization Card. At the time he filed his bankruptcy petition, the Debtor possessed the Employment Authorization Card, which allows non-citizens and those without lawful permanent residency to work in the United States.

It was not until October 26, 2005 -- more than three months after the Debtor filed for bankruptcy and some two months after the Geiszlers filed their Objection to Debtor's Claim of Homestead Exemption -- that the Debtor received notice that his Application had been approved on a two-year conditional basis. The Debtor's permanent residence status, however, is conditional because it was based on a marriage that was less than two years old on the day the Debtor was given permanent residence. 8 U.S.C. § 1186a (2000). In order to remove the conditional status, the Debtor and his spouse will have to prove prior to the end of the two-year conditional period that they did not get married to evade the immigration laws of the United States. 8 U.S.C. § 1186a.

The Debtor claims that he is entitled to the Florida homestead exemption because the pending application for permanent resident status, which was eventually approved, enabled him to form the intent to reside permanently in his Florida home.

### Issue

The dispositive issue before this Court is whether the Debtor could form the requisite intent to make his home in Clearwater, Florida, his permanent residence to qualify for Florida's homestead exemption when the Debtor did not receive permanent resident status until three months after he filed his bankruptcy petition.

### Conclusions of Law

A. Jurisdiction

This court has jurisdiction of this matter under 28 U.S.C. sections 157 and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(B).

B. Applicable Burden of Proof

Under Federal Rule of Bankruptcy Procedure 4003(c), the objecting party bears the burden of establishing that the exemption is not properly claimed.  Therefore, the Geiszlers must prove that that the Debtor is not entitled to the Florida homestead exemption.  It should also be

4

noted that, as a matter of public policy, the Florida homestead exemption should be liberally construed "in the interest of protecting the family home." *Quigley v. Kennedy & Ely Ins., Inc.*, 207 So. 2d 431, 432 (Fla. 1968).

C. *Florida Homestead Exemption*

Florida law governs bankruptcy exemptions for Florida residents. 11 U.S.C. § 522(b); Fla. Stat. § 222.20. The state's homestead exemption is found in article X, section 4, of the Florida Constitution, which provides as follows: "There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon ... the following property owned by a natural person: (1) a homestead . . . ." Fla. Const. art. X, § 4.

The first question in determining the applicability of this provision to the Debtor's home is the date, which governs the determination of homestead status. On this question the law is clear: the claim of exemption is to be determined as of the petition date. *See, e.g., In re Sandoval,* 103 F.3d 20, 23 (5th Cir. 1997) (holding debtor's exemptions to be determined on the date of filing); *In re Marcus*, 1 F.3d 1050, 1052 (10th Cir. 1993) (same); *In re Ballato*, 318 B.R. 205, 209 (Bankr. M.D. Fla. 2004) (same); *In re Buick,* 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) (same); *see also In re Rivera*, 5 B.R. 313, 315 (Bankr. M.D.

Fla. 1980)(stating that "the right to claim exemptions by a
Debtor is governed by the facts and governing circumstances
which existed on the date the petition was filed and not by
any changes which may have occurred thereafter").
Consistent with this case law, section 522(b)(2)(A) of the
Bankruptcy Code provides that an individual debtor may
exempt from his bankruptcy estate "any property that is
exempt under Federal law, other than subsection (d) of this
section, or State or local law that is applicable *on the
date of the filing of the petition.*" 11 U.S.C. §
522(b)(2)(A) (emphasis added).  Accordingly, the Court
finds that July 15, 2005, the date the Debtor filed his
petition, is the date that controls what exemptions will be
available to the Debtor.

Next the Court must determine whether the Debtor was a
Florida resident as of the petition date.  It is well
settled that to obtain the benefits of the Florida
homestead exemption, the debtor must have a residence in
the state as well as the actual intent to reside in Florida
permanently.  *In re McCarthy*, 13 B.R. 389, 390 (Bankr. M.D.
Fla. 1981); *Cooke v. Uransky*, 412 So. 2d 340, 342 (Fla.
1982); *Hillsborough Inv. Co. v. Wilcox*, 13 So. 2d 448, 452
(Fla. 1943).

An alien debtor can only satisfy the permanent residency requirement if the debtor is granted a permanent visa. *In re Gilman*, 68 B.R. 374, 375; *Reheb v. DiBattisto*, 513 So. 2d 717, 718 (Fla. 3d DCA 1987). The bankruptcy court in *In re Bermudez*, 1992 Bankr. LEXIS 547 (Bankr. S.D. Fla. 1992), reasoned that "unless the debtor is issued such permanent status, the alien debtor cannot legally formulate the requisite intent to make the house the family's permanent residence, regardless of the debtor's subjective intention to remain indefinitely." *Bermudez*, 1992 Bankr. LEXIS at *3-4 (citing *Gilman*, 68 B.R. at 375-376; *Cooke v. Uransky*, 412 So. 2d at 342; *In re Boone*, 134 B.R. 979, 981 (Bankr. M.D. Fla. 1991); *Matter of Cooke*, 1 B.R. 537, 538-539 (Bankr. N.D. Fla. 1979)).

In *Gilman*, a case that bears some resemblance to this one, the debtor sought to claim his Florida home as exempt. *Gilman*, 68 B.R. at 375. At the time he filed his bankruptcy petition, the debtor held a B-1 visa, allowing him to operate a business, but he did not possess a permanent visa. *Id.* Relying on *Cooke v. Uransky*, the bankruptcy court held that because the debtor did not hold a permanent visa, he was "not legally entitled to formulate the requisite intent to remain permanently within the state of Florida" and, therefore, he could not claim his Florida

home as his permanent residence. *Id.* at 375-376.

Similarly, the debtor in *Boone* attempted to claim her Florida home as exempt. *Boone*, 134 B.R. at 980. The debtor, a Canadian citizen, contended that she was entitled to the exemption because she had a valid social security number, she was legally employed in the United States, she intended to remain a permanent resident of Florida, and she resided on the property claimed as her homestead. *Id.* The Court found, however, that because the debtor did not hold a permanent visa, she did not have the legal right to remain in the United States. *Id.* at 981. As such, she could not form the intent to legally remain permanently in Florida, and she could not claim her Florida residence as exempt. *Id.*

In *In re Walter*, 230 B.R. 200, 203 (Bankr. S.D. Fla. 1999), the Bankruptcy Court for the Southern District of Florida again recognized that non-immigrant aliens without permanent visas cannot formulate the requisite intent to establish a permanent residence in the state. The debtors in that case, Canadian citizens, both held Resident Alien Cards allowing them to live and work in the United States for a limited time. *Id.* The Court found that because the debtors did not hold permanent visas, they were not entitled to claim any property as a homestead. *Id.* at 204.

8

*See also In re Levy*, 221 B.R. 559, 567 (Bankr. S.D. Fla. 1998) (stating that "[n]on-immigrant aliens in the United States on temporary rather than permanent visas are incapable of formulating the requisite intent to establish permanent residence").

The Debtor in this case argues that he is entitled to the homestead exemption because the Debtor presently resides at the home in question and the evidence shows that the Debtor intends to make this home his permanent residence. In this regard the Debtor relies on *Lisboa v. Dade County Property Appraiser*, 705 So. 2d 704 (Fla. 3d DCA 1998), as being more instructive than the above-cited cases. In *Lisboa*, the court found that a political asylum seeker whose application was pending as of the relevant taxing date was a permanent resident for purposes of Florida's homestead exemption from ad valorem taxation. *Id.* at 706.

There are, however, two key distinguishing factors between this case and *Lisboa*. First, this case does not involve the homestead exemption in the tax context. The homestead exemption for tax purposes is found in section 196.031(1), Florida Statutes, which states in pertinent part as follows:

> Every person who, on January 1, has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his or her permanent residence, or the permanent residence of another or others legally or naturally dependent upon such person, is entitled to an exemption from all taxation, except for assessments for special benefits, up to the assessed valuation of $5,000 on the residence and contiguous real property, as defined in s. 6, Art. VII of the State Constitution.

Fla. Stat. § 196.031(1).

The language of this statute relies on subjective "good faith" as opposed to the objective ability, via permanent resident status, to maintain a domicile in Florida for purposes of exemption from forced sale.  It is possible, for example, that a person entitled to the tax exemption may not be immune from the claims of creditors. *See In re Lee*, 223 B.R. 594, 599 n.3 (M.D. Fla. 1998) (noting that "the status of property as 'homestead' for tax exemption purposes is not controlling" in the determination of eligibility of forced sale exemption, although "it is persuasive evidence as to the Debtor's bona fide intention").

More important, however, is the distinction between the status of the Debtor in this case and the status of the appellant in *Lisboa*.  In *Lisboa*, although the appellant had an application for political asylum pending, his

immigration status at the time he sought the tax exemption was "permanently residing under the color of law" ("PRUCOL"). *Lisboa*, 705 So. 2d at 705. As the court in *Lisboa* explained, "[t]he [Immigration and Naturalization Service] defines a PRUCOL's status as permanent and as a relationship of continuing nature, as opposed to temporary, even though their status may eventually be dissolved." *Id.*

Unlike the appellant in *Lisboa*, the Debtor's residential status on the petition date was temporary; he merely held an Employment Authorization Card. It was not until three months after filing his petition that the Debtor received notice that his Application to Adjust to Permanent Resident Status had been approved. Therefore, based on the consistent authority above, on the petition date the Debtor was unable to formulate the requisite intent to make the subject property his permanent homestead.

### Conclusion

To qualify for the Florida homestead exemption, the Court must find that the Debtor is a permanent resident of the state and intends to make his home his permanent residence. An alien, like the Debtor in this case, can only meet this residency requirement if he has obtained permanent resident status as of the petition date.

11

On the date the Debtor filed his bankruptcy petition, his application to adjust to permanent resident status was pending.  He did not acquire permanent resident status until more than three months after filing his petition. Consequently, the Debtor did not fulfill the residency requirement as of the petition date.  Accordingly, the Debtor's claim of homestead exemption will not be allowed, and the Court concludes that the Geiszlers are entitled to an order sustaining their objection to the Debtor's claim of homestead exemption. Accordingly, it is

ORDERED that the Geiszlers' Objection to Debtor's homestead exemption is sustained.

DONE AND ORDERED at Tampa, Florida, on March 23, 2006.

MICHAEL G. WILLIAMSON
U.S. Bankruptcy Judge

12

Copies furnished to:

Zsolt Fodor
2504 Southern Oak Circle
Clearwater, FL 33764

Ted J. Starr
Starr Law Offices PA
8181 US 19 North
Pinellas Park, FL 33781

Robert Geiszler and Joan Geiszler
7000 Hiddenacres Way
Seminole, FL 33772

Paul G Tellez
Donica Law Firm, PA
106 S Tampania Avenue, #250
Tampa, FL 33609

Chapter 7 Trustee
R. Jay Harpley
1602 W. Sligh Avenue #100
Tampa, FL 33604

United States Trustee
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, FL 33602

F:\WORDWILL\CASES\Fodor\Fodor-Homestead.doc